**FILED**

**FEBRUARY 20, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE U.S. DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Matthew Vassil , individually and by and through his parents, Joyce Vassil and Anthony Vassil,<br><br>Plaintiffs,<br><br>v.<br><br>Glenbard Township High School District #87, and Michael Meissen, sued in his official capacity as Superintendent of the School District, and Dr. Christopher Koch, its Superintendent, sued in his Official Capacity, and ILLINOIS STATE BOARD OF EDUCATION, Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**08 C 1056**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

### COMPLAINT

Now come the plantiffs, Matthew Vassil, Joyce Vassil and Anthony Vassil, by and through their attorney, Charles P. Fox and complaining of the defendants alleges as follows:

### COUNT I

**INTRODUCTION**

1. Plaintiffs, a student with disabilities and his parents, seek relief under the Individuals With Disabilities Education Improvement Act of 2004 (Public Law 108-446 ("IDEIA"), 20 U.S.C. Section 1400 *et seq.,* and the Illinois School Code for violations of their right to a free, appropriate public education. Plaintiffs appeal from an administrative, due process decision concerning Matthew Vassil's special education that was rendered on October 25, 2005 by Impartial Hearing Officer Judge Julia Quinn Dempsey after a three-day

hearing. Her due

process decision is attached and incorporated herein as Exhibit A.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 20 U.S.C. 1415(i)(2).

3. Venue is properly situated in this Court because the acts complained of occurred

in and the parties reside in or do business in the Northern District of Illinois.

## PARTIES

4. Matthew Vassil is a 19-year-old student with special needs. Matthew is a attending a

transition program known as PACE that is affiliated with National Louis University. He

is a child with a disability within the meaning of the IDEIA, and Illinois law.

5. Joyce Vassil and Anthony Vassil. are Matthew's mother and father. They are U.S.

citizens and reside in Glen Ellyn within the boundaries and jurisdiction of defendant's

school district.

6. Glenbard Township  High School District #87 ("District 87") is the body politic

providing regular education, special education and related services to children who reside

within district boundaries, and the Board of Education of Glenbard Township High

School District 87 is its governing board. Mr.  Michael Meissen is the Superintendent of

District 87. He is sued in his official capacity.

7. Defendants receive federal funds under the IDEIA and are bound by its

requirements.

## STATUTORY ENTITLEMENT

8. Plaintiffs challenge the individualized education program  ("IEP") drafted by School

District 87, and Plaintiffs filed their demand for due process to challenge his special education programming on or about August 2, 2007.

9. The IDEIA and its implementing regulations entitle all children with disabilities in the United States to a free, appropriate public education ("FAPE"), including instruction that is individually tailored to meet the child's special needs. 34 C.F.R. 300.13. Once the child's needs are determined, the school district staff and the child's parents form a team to draft the child's "Individualized Education Program ("IEP"). Membership on the IEP team is prescribed by law and implementing regulations.

10. The IDEIA, and Illinois law regulate the content and process of drafting the IEP. The IEP must include a statement of how the child's progress toward annual goals will be measured, and how parents will be informed of the child's progress toward those annual goals and whether that progress is sufficient to enable the child to achieve those annual goals by the end of the year. The IEP must be in effect at the beginning of each school year, and is the formal, written offer of services to parents.

11. The law also requires that the IEP include transition plans for students over the age of 14 1/2 with "appropriate measurable post- secondary goals." 20 U.S.C. sec.1414 (d)(1)(i) (VIII). The law further requires districts to provide transition services that are based upon "age appropriate transition **assessments**" 20 U.S.C. sec.1414 (d)(1)(i) (VIII).

12. The transition plan is a prime part of an IEP and the focus of the IEP for students over the age of 14 ½.

13. The IEP also must provide "related services" as needed by the child with disabilities to benefit from his special education.

14. The IDEIA, and Illinois law provide parents and school districts the right

to request an impartial due process hearing if they disagree about any matter related to the

identification, evaluation, or educational placement of the child, or the provision of FAPE

to the child. 20 U.S.C. 1415(b)(6), (d)(2)(j) and (i)(2). The Illinois School Code and the

Illinois Administrative Code establish the procedures for due process hearings. 105 ILCS

5/14- 8.02a(g). Any party aggrieved by the final written decision of the hearing officer has

the right to commence a civil action with respect to the issues presented at hearing within

120 days after a copy of the decision is mailed to the party. 105 ILCS 5/14-8.02a(i).

Filing of this appeal is timely.

**FACTS**

15. Matthew is a student with special needs under the eligibility of learning disability and

speech and language impairment.

16. Matthew attended 4 years of high school at Glenbard West High School in Glen

Ellyn, Illinois. He did not graduate in 2007 and was found eligible to continue receiving

special education services because of his need for additional education and support to

make a successful transition to adult life.

17. He received his first and only formal assessment at the school for purposes of

transition in late 2007. This assessment is known as a Functional Vocational

Assessment.

18. His IEP failed to include goals for transition as required under IDEIA.

19. His IEP failed to address vital areas of transition need including but not limited self-

advocacy and self-determination and economic self-sufficiency.

20. The IEP failed to provide Matthew with a program that had any research basis or was shown to have efficacy to provide a functional life outcome for this student. The school's proposal was for him to attend the CONDO program that is an apartment that children students learn life skills. The staff readily admitted that Matt was not appropriate for this program but subsequently recommended this inappropriate program for him.

21. IDEIA also requires that special education programs are to be based upon peer-reviewed research to produce the viable outcomes discussed above. 20 U.S.C. sec.1414(d)(1)(A)(i)(IV). The district's transition programming is not based upon any research at all. At a minimum, the district should have some substantial basis to believe that its programming is producing effective outcomes for its students. The testimony at hearing bore out that the district had almost no idea of the effectiveness of its programming; to the extent it had any data, it showed that its programming was not effective for many of its graduates who have participated in the CONDO transition programming.

22. Transition planning is specifically intended to move a student from enjoying the supports of an IEP to a life that allows for "full participation, independent living, and economic self sufficiency" 20 U.S.C. sec 1400(c)(1)." The regulations define transition planning as part of **"results-oriented process** that is focused on improving the academic and functional achievement of the child with a disability to facilitate the child's movement from school to post school activities, including post secondary education, vocational education, integrated employment..."

23. Matthew's parents filed a  due process demand on August 2, 2007, and the hearing officer was appointed on August 10, 2007. The case went to hearing on October 2, 4 and

5, 2007

24. Matthew and his parents at the hearing sought placement for Matthew at a residential

program known as PACE which is a research based transition program affiliated with the

teaching university National Louis.  The also sought reimbursement for out of pocket

expenses and compensatory education for periods that Matthew did not receive a Free

Appropriate Public Education mandated in IDEIA.

25. The Hearing Officer rendered her decision on October 25, 2007 ruling for  Plaintiffs in

so far as she awarded $8,000 for part of the PACE tuition and ordered a new IEP to be

created among other orders. (See decision and order attached as Exhibit A).  Plaintiffs

timely filed this action appealing that decision.

**GROUNDS FOR REVERSAL**

26. The hearing officer's decision is contrary to the manifest weight of the evidence and is

based upon findings that demonstrate error that ignore, distort, or fail to give due weight

to substantial credible evidence from the school staff and the Plaintiffs' other witnesses,

who were knowledgeable about Matthew's needs, while accepting evidence that is not

credible. The hearing officer committed reversible error as follows:

a. She failed to make any factual or legal findings to support her conclusory statement

that the 2006-2007 IEP was appropriate;

b. She erred when  she found that the student did not need PACE to meet his transition

goals;

c. She erred when she concluded that the school district could fashion an appropriate

program to meet his needs when all of the evidence showed that the district did not have

knowledge or experience to offer a legally sufficient program to meet this student's needs;

d. She erred when she denied the parents claim for compensatory education as this finding is against the manifest weight of the evidence showed that he has not received an appropriate program during the 2006-2007 and 2007-2008 school year up to the date of the hearing;

e. She erred when she denied the parents claim for reimbursement as this finding is against the manifest weight of the evidence showed that he has not received an appropriate program during the 2006-2007 and 2007-2008 school year up to the date of the hearing requiring the parents to lay out monies which were rightfully the responsibility of the school district.

f. She erred when she denied the parents claim for room and board and tuition at PACE for the entire 2007-2008 school (less the tuition ordered in the decision) as this finding is against the manifest weight of the evidence.

g. She erred when she failed to make a finding that the school's IEP and programming were insufficient since they lacked any research basis and have not shown any efficacy in transitioning students to economic self sufficiency and real life outcomes that is one of the primary obligations under IDEIA.

h. She erred when she failed to find that the IEP and programs were insufficient when the school district failed to conduct an "assessment" as defined under the law, and when it did it failed to appropriately implement the findings of that report.

29. The due process decision should be overturned (with the exception of the reimbursement for $8,000) because of the foregoing legal errors that the hearing officer

committed in reaching her decision.

WHEREFORE, the Plaintiffs, Matthew Vassil, Joyce Vassil and Anthony Vassil pray this Honorable Court for an Order:

A) Reversing the specified parts of the due process decision;

B) Finding and declaring that defendants violated plaintiffs' right to a free, appropriate public education;

C) Ordering that Matthew should receive tuition and room and board at PACE for the 2007-2008 school year up to the implementation date of his last IEP;

D) Ordering Defendants to reimburse Joyce and Anthony Vassil for all out of pocket expenses that were rightfully the responsibility of the school district, including but not limited expenses related to evaluations, room and board and tuition among other cognizable expenses;

E.) Ordering that Matthew be placed at PACE as a form of compensatory education for the time he was denied a FAPE;

F) Finding and declaring that Plaintiffs are prevailing parties within the meaning of the IDEIA;

G) Awarding reasonable attorney's fees and costs to Matthew's parents;

H) Entering such other, further and different relief as to this Court seems just.

## COUNT II

1-29. Plaintiffs repeat and reallege paragraphs 1-29 of Count I as and for their

paragraphs 1-30 of Count II as if fully set forth herein.

30. The Illinois State Board of Education ("ISBE") is the body politic named as the state educational agency under the IDEA and IDEIA, receives federal funding in furtherance of its responsibilities under that statute, and is bound by its requirements.

31. Pursuant to 105 ILCS 5/14-8.02a, ISBE has established and maintained an impartial due process hearing system mandated by 20 U.S.C. 1415, and is responsible for hiring and assigning hearing officers, for acquiring and storing the administrative record of the due process hearing after the hearing officer issues a final decision, and for compiling a certified copy of that record for filing in court in the event of an appeal.

33. Pursuant to its statutory obligations, ISBE has, in its possession or control, the administrative record of the due process proceedings between the parties herein, designated as that is attached hereto as Exhibit A. That record includes, among other things, the parents' due process request, the Hearing Officer's pre-hearing notices and orders, correspondence between the Hearing Officer and attorneys for the parties, the transcript of the three-day hearing, and Motions and documentary evidence submitted by the parties.

34. The IDEA (and state law) provide that the reviewing Court in an appeal from a hearing officer's decision "shall receive the records of the administrative proceedings," 20 U.S.C. 1415(I)(2)( c).

WHEREFORE, Plaintiffs pray this Honorable Court to enter an Order:

A) Requiring ISBE to compile the complete administrative record of the due process proceedings known as ISBE #2007-0310;

B) Requiring ISBE to certify that the record is complete;

C) Requiring ISBE to file herein a certified copy of the record and to serve copies of the complete administrative record upon the parties;

D) Entering such other, further, and different relief as to this Court seems just and necessary.

## COUNT III

1-34. Plaintiffs repeat and reallege paragraphs 1-34 of Count II as and for their paragraphs 1-34 of Count III as if fully set forth herein.

35. Charles P. Fox, attorney in the solo practice of law represented the family in their challenge to defendant-school district's actions.

36. In the due process hearing decision, the IHO ruled in favor of plaintiffs that the child's rights had been violated and he lacked a sufficient IEP for the first part of the 2007-2008 school year and ordered the parents to be reimbursed for $8,000 among other remedies.

37. In light of this result, plaintiffs substantially prevailed in the proceedings under IDEIA sufficient to be awarded fees.

38    In the course of representation through preparation for hearing, prehearing litigation, 3 days of hearing, attending an ordered IEP meeting and post-due process litigation [and more hours are anticipated to be expended]  Charles P. Fox, as attorney for the plaintiffs expended the following hours on the case against defendant to-wit 112.75 hours and various costs [see itemized bill current as of January 20, 2008]

39    Charles P. Fox has spent and will spend additional time litigating this action since Janaury 20, 2008 including but limited to the preparation of this pleading.

40      In light of the experience and qualifications of Charles P. Fox, a reasonable

hourly rate for his services is $275.00 per hour

41      The total reasonable fees and costs incurred to date is $27,282.25 (See itemized

time sheets attached to this complaint.)

42      The attorneys fees in this action should be payable to the Law Office of Charles P.

Fox.

43      On or about January 20, 2008, demand was made for fees pursuant to local court

rules but as of February 19, 2008 no written response has been received from counsel for

the defendant, school district.

        WHEREFORE, plaintiff prays this court to order payment of attorneys' fees from

defendant in the amount of $27,282.25 plus all additional sums incurred and in litigating

this case, and  to grant such other relief as is just.


                                Respectfully submitted,


                                Attorney for the Plaintiffs

Charles P. Fox ARDC #6193023
Law Offices of Charles P. Fox
3710 Commercial Ave.
Ste. 6
Northbrook, IL 60062
847-205-9897
fax 847-205-9840
cfoxatty@earthlink.net

10/25/2007 8:34 PM  FROM: 708-366-5121   TO:   1 847 205-9840   PAGE: 002 OF 012

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| **MATTHEW VASSIL** | ) | **DUE PROCESS HEARING** |
| | ) | |
| **AND** | ) | **CASE    #2007-0310** |
| | ) | |
| **GLENBARD TOWNSHIP** | ) | |
| **HIGH SCHOOL** | ) | |
| **DISTRICT #87** | ) | |
| | ) | |

## PROCEDURAL INFORMATION

On Tuesday, October 2, 2007 at 8:30 AM an impartial due process hearing was convened by Judge Julia Quinn Dempsey, the Hearing Officer, on behalf of Matthew Vassil hereinafter, the Student, at the Glenbard High School Facilities Office, 671 Cresent Blvd., Glen Ellyn, Illinois. The hearing was continued to Thursday, October 4 and Friday, October 5, 2007 when it concluded. Neither party requested a transcript be prepared prior to the writing of a decision and no briefs were submitted. Additional material consisting of Points and Authorities and copies thereof were submitted on behalf of both Parties. The last of this material, consisting of hard copies of case law and portions of the IDEIA were received on October 15, 2007 and the record closed on that date. (It should be noted that an e-mail was received by the Hearing Officer from the Student's attorney on the October 12, 2007 deadline date for submission, citing the case and the statute, and the hard copies followed and are included in the record.)

The reinstated case was received by the Hearing Officer on August 10, 2007 from ISBE with a reappointment letter setting the Pre-hearing date for September 4, 2007. It was convened on that date, by telephone, and hearing dates in early October were agreed upon. With some subsequent e-mailing pertaining to party, witness and attorney availability, dates were confirmed. Witness and document lists were exchanged, and it was agreed that the attorneys would create a Joint Document book to facilitate the hearing and subsequent supplementary material could be exchanged by the attorneys prior to the cut-off date, September 27, 2007. The Parties were represented by Darcy Kria for the District and Charles Fox for the Student and Parents. Prior to the Due Process Hearing, Counsel for the Student and Parents filed a Motion in Limine to which Counsel for the District responded. In addition, various other technicalities were raised by both Parties. They were ruled on by the Hearing Officer, on the record, at the beginning of the Hearing and were not raised subsequently. The Hearing Officer has jurisdiction to hear and decide this matter under 105ILCS 5/14 - 8.02a et seq., 23 Illinois Administrative Code 226.600 et seq., the Individuals with Disabilities Act, as amended 20 USC 1400 (IDEA), and 34 CFR 300.507 et seq. The parties were informed of their rights under 105 ILCS 5/14 – 8.02 et seq., 23 Illinois Administrative Code 226.636 and CFR 300.509.

'Exhibit A'

1

It was decided during the Pre-Hearing Telephone Conference that:

1. Neither Party objected to any of the material or witnesses listed.
2. It was understood by all Parties that the Hearing Officer would rule on any evidentiary objections to documents at the Hearing.
3. The Student would attend the Hearing.
4. No interpreter would be needed.
5. The Hearing would be closed.
6. All witnesses would be excluded prior to testifying.
7. The District would arrange for a court reporter.
8. The Parties agreed to submit documents and final witness lists to each other by the cut off date, 5 days before the hearing.
9. The Parents would present their case first.
10. Opening statements of 10 minutes would be allowed for each Party.
11. Closing Statements of 15 minutes would be allowed for each Party.
12. Points and Authorities, with copies thereof, would be submitted after the close of evidence at a time agreed upon between the Hearing Officer and the Attorneys.


## ISSUES


1. Whether an IEP, with appropriate services to address the Student's transition needs, was developed for the 2006-2007 and the 2007-2008 school years?

2. Whether the programming and services offered by the District to the Student are sufficient to provide a Free, Appropriate Public Education (FAPE) in the Least Restrictive Environment (LRE) for the Student so as to achieve the goals of his transition plan?

3. Whether the District should pay for or reimburse the Parent for the cost and expenses associated with the non-public school, private placement made by the Parents at PACE, including room, board and tuition and whether the Student requires continued placement at PACE in order to be educated as required by applicable law?

4. Whether the Parents should be paid by the District, compensatory expenses related to any periods that the District is found to have failed to design or implement FAPE for this Student during the 2006-2007 and 2007-2008 school years?

2

## FINDINGS OF FACT

The Student is a now 19 year old young man, in his "5th" year of high school. He "graduated" with his class, and his twin brother, from Glenbard West in the spring of 2007. He had sufficient credits to graduate, but the District agreed that he continued to be entitled, because of his special education status, to have transitional vocational services provided by the District through his 21st year, until he was 22.    The District is not contesting the Student's eligibility for these transitional vocational services but believes the program within the District, referred to as the "Condo" program, is flexible enough and varied enough to give the Student the services he needs. The Parents believe the District has not met its responsibility under the law to provide them with a definite, certain program, spelled out in an IEP for the 2007-2008 school year.

The Student has been in Special Education since Pre-Kindergarten. His 1st case study evaluation was done when he was almost 5, on October 15, 1993, by District 16, for the Early Childhood Special Education program. (Jx483-493).    From Pre-K through 3rd grade he received Speech/Language services and Occupational Therapy. He struggled in 1st and 2nd grade and in 3rd thru 8th grade he was in the Modified Instructional Program. He received direct social work services in 4th and 5th grade and consultation in 6th. In 2002 he was assessed by the Northern Illinois University Reading Clinic. (Jx472-482). He was 13 years old, in 7th grade. His reading deficit was very pronounced at that time. His independent reading level was assessed at 2nd grade, his instructional level at 3rd through 5th grade and his frustration level at 6th grade.

A 2004 Psychological evaluation done as part of a triennial re-evaluation found his FSIQ to be 70- consistent with prior testing. Achievement testing demonstrated that reading and reading comprehension as well as math and writing were all in the deficit area academically. (Jx462). He has received many Speech/Language assessments and basically his test scores are regarded as commensurate with his level of cognitive functioning. His Special Education handicapping condition is noted as SLD. His processing difficulties and deficiencies have always been significant. He took the ACT in school year 2005/2006 as part of the required Illinois State testing. He received accommodations, as he always has when tested and evaluated. He had an 11 composite score placing him in the 1st percentile. The last psychological test was done in 12th grade, in January of 2007 (Jx388-397). His FSIQ was again determined to be 70. The examiner noted that the Student functions overall in the borderline range of intelligence with evenly developed verbal and non-verbal abilities. (Jx391). The WIAT-II Achievement testing showed age equivalencies on the subtests varying from roughly 8 to 11 years old and grade equivalencies of roughly 3rd through almost 6th in word reading. (Jx396). The conclusions once again referred to his significant processing needs and indicated he had made some improvement since earlier testing, but identified continued educational needs. (Jx393).

In the area of transition preparation while at Glenbard West the Student has taken an interest inventory through the Discovery program and the PLAN, which is given to all Students in grade 10. (Jx768-770). The Student had a lengthy, in-depth vocational assessment done January 2 through January 12, 2007 by Spectrum. Trial Job Site Assessments, the McCarron Dial-

3

Perceptual Memory Task Assessment (PMT) and Vocational Counseling Assessments were components of the evaluation. The recommendations point out that all of the Student's interests and strong ability areas can be addressed in the various curriculum options available at the College of DuPage (COD) in Glen Ellyn where the Student's home has been. The other recommendations would seem to be implementable by whomever is going to work with him in the future.

The Spectrum results and recommendations are incorporated generally, in different language in the draft goals set out in Jx68-73, testified to as being sent to the Parents by Lynne Matczak, the District 87 Director of Special Education, on March 27, 2007. This was after the last IEP meeting between the Parents and the District on March 20, 2007 where the Parents left before the meeting ended. Ms. Matczek testified that she never received any response. The District also provided a tentative Transition Program schedule to the Parents after the late May meeting with the Parents and the Attorneys was held. (Jx494). This was also testified to by Ms. Matczek. She said it didn't describe the Condo program, but the Student's program using the Condo format- which would be modified for him as it was not appropriate in the general form used. The rough draft document seen as Jx728 (and referred to during the hearing as the "murky" document) was developed by District staff in an effort to provide an individualized program for the Student that followed some of his preferences. It was sent home by Audrey Miller in March between the two IEP meetings for the Student to express some reaction to it. None was forthcoming and the Student did not seem to have participated in the March 20, 2007 IEP meeting, nor in the March 5, 2007 meeting, though he was signed in to that one. He had testified that he attended IEP meetings, mostly as an observer, but responded to questions. This is borne out by the various sign in sheets for the IEP meetings held at Glenbard West where his name consistently appears.

The Parents have consistently attended his IEP meeting since his 9th grade year at Glenbard West. An Advocate, Lisa Hannum, has also signed in since the February 6, 2004 IEP meeting, in the middle of his 9th grade year. (Jx308). It is presumed that this assistance to the Family was a help in voicing their concerns regarding the Student's condition and educational needs. At the time the Advocate began signing in at meetings, the Mother was very concerned regarding the Student's reading program. This has been a significant area of deficit for the Student all along, caused by his processing weaknesses which negatively impact his comprehension and retention in all academic areas. The District has tried to address these issues since the 9th grade year with the help of Audrey Miller and the Slant program. She has worked with the Student for 4 years, been his case manager, tutored him and attended all his IEP meetings. She said the Student's academic issues and social needs continue and need to be addressed. This does not seem to be happening at PACE as the program has no extensive or intensive academic instruction with a focus on maintaining and improving word retrieval skills. He also needs specific job skill related speech and language services to improve his work-related vocabulary and vocational reading vocabulary. It was noted that the remedial program at COD was not appropriate for the student as he was too advanced for it, yet possibly not advanced enough for regular courses. Although he completed the Culinary Program over 2 years and earned a certificate, it was noted that the book parts of the course were difficult for him and the Spectrum evaluation noted this as well in regard to the auto mechanics course.

In addition to completing the credits needed for high school graduation and finishing the 2 year culinary course, the Student was assisted by a Glenbard High School job coach to acquire a job at Target in the community.  The Student has since been hired by Target, at market wage and continues to return to work there during breaks and vacations.  They are soon going to teach him to drive a forklift and his supervisors rate him as a valued employee.  The Student has also participated in work with a sports team at the school before his Target experience began.  He also was in the Key Club and participates with his church youth group. This past summer he went on a work trip with them.  His friends have been mostly also his twin brother's friends and that brother graduated with the Student and is now attending college and living in student housing away from the Glen Ellyn area, in the city.  The Student is very happy with PACE as he seems to feel he is also away at school as is his brother.  Overall, the Student has had many growth experiences at Glenbard West, including appropriate attention to his vocational education.

The IEP documents in general show growth and significant attention to legal requirements.  They are contained, along with evaluation data in the exhibits from Tab 14 to Tab 49 in the Joint exhibit book.  The District complied with Procedural Requirements concerning notice, frequency and IEP documentation of required triennial re-evaluations and annual reviews.  The goals and objectives, as well as criteria for measurement, were legally adequate.  The hearing officer notes the Parents filed a complaint with ISBE alleging the District's failure to provide formal quarterly reports and that the district acknowledged this, feeling their informal report cards, progress reports and IEP meeting were enough, but filing a revised compliance plan with ISBE which was found acceptable by ISBE.  Therefore that issue will not be addressed in this due process hearing decision.    Additionally, even though the Student had earned sufficient credits to actually graduate with his class and had been on a track to do so, with continuation of his post-secondary education at the COD and the Technology Center of DuPage where he earned his Skills Achievement Certificate in Culinary Arts, he only participated in a sham graduation, with the concurrence of the District, so that he could continue to be eligible for services from them or paid for by them. (Jx57).

Much attention in the hearing and the exhibit book has been devoted to the PACE program. Jx510 throughJx717 are all information about PACE. Dr. Laura Owens, who appeared as an expert for the Parents, was familiar with the Program and testified at great length. The Director of PACE, Carol Burns, and the Assistant Director Barbara Kite, also testified about the Program. PACE is a very well known innovative program, one of very few in the country to serve the population it targets.  The student it serves is generally a 70 or higher IQ, high school graduate with learning disabilities of various types, who needs or wants a post secondary experience, but is not appropriate or capable of a regular college situation.  It provides a somewhat college like dormitory type living experience coupled with several unpaid internships in various fields so that the youth enrolled begin to have some understanding of the world of work and the opportunities available at a level they can achieve.  It also provides some training in money management and because of the living situation, promotes social interaction and hopefully the development and growth of social skills.  It operates fall, winter and spring sessions with a rate of $8,000 tuition per session and $8,325 per year room and board.  It estimates an additional $1,700 per year as

the annual amount for spending money and special events.    The program is highly structured and supervised.

The Student testified that he is very happy at PACE and likes the Program.  He is working in a food service apprenticeship at Evanston Hospital and takes the bus to work along with several other PACE students. There are 5 of them at the hospital.  He likes the program structure, keeping his room neat, going to dinner and meals with other Students. They are on a meal plan so all meals during the week are at the same places.  They are required to budget small amounts of money to "pay" for these meals as a way of teaching money management skills. He enjoys the fact that he is expected to be "on his own" and responsible for himself within the structured program.  He says he has more self-confidence and a better way of understanding problems. Other than the social interaction, he does not seem to be getting anything he has not already had at the High School.  Both his culinary arts program supervisors and his Target supervisors were very complimentary about his work habits, promptness, appropriateness of dress, attention to detail and his amenability to supervision.  His academic related class seems to be in Greek Mythology.  They are reading and doing other activities like acting out the myths.    There appears, to be instruction in Study Skills, getting organized, preview and review, there are money management classes, with banking, writing checks and balancing. He began the Program in mid-September and had not been back to Glen Ellyn until the due process hearing began.

All of the witnesses who testified appeared to be truthful and competent.  Many hold differing views but none seemed to be anything other than sincere in what they were testifying.

## CONCLUSIONS OF LAW AND OPINION

The Hearing Officer has read every piece of paper presented to her including all of the material in the large binder and extra exhibits submitted.  The Hearing Officer is including all of this material as part of the hearing record and is taking Judicial Notice of any of it that was not formally marked and moved into evidence.  This is done pursuant to the Administrative Hearing Act, 5 ILCS 100/10-35(a) (3).  The Hearing Officer also received a number of cases and copies of Statutes, Administrative Rules and OSEP letters and Guidance from both Parties.  All were read and considered.

In every dispute regarding a handicapped child and a school district the analysis necessary to reach a decision has begun with the bedrock teaching of _Rowley (Board of Education of the Hendrick Hudson Central School District, Westchester County et al. V. Rowley by her Parent, Rowley et us. 458 U.S. 176 (1982)._  In that case, the United States Supreme Court set forth a two pronged test to determine whether a school district has offered a student a free appropriate public education (FAPE) in the least restrictive environment (LRE).  The first inquiry to be made is whether the school district has complied with the statutory procedure; (no substantial procedural violations) required by the Individuals with Disabilities Education Act (IDEA) 20U.S.C. 1401 et seq.   Any denial of procedural rights must result in an adverse impact on the parent's

participation or the Student's education so as to result in a loss of educational opportunity in order to be a denial of the law's requirement of a free appropriate publicly funded education (FAPE). The first test of *Rowley* allows relief only if the alleged procedural violations have resulted in substantial harm to the Student. *W.G.V. Board of Trustees, 960 FF2d 1479, 1484 (9th Circuit 1992)*. After a thorough review of the record, I conclude that there are no substantial procedural violations in this case and there has been no subsequent or consequential harm to the Student flowing therefrom. Here, the District complied fully and completely, as required, with all procedural requirements of the law. They provided adequate notice on all MDC's and IEP conferences on all occasions as reflected in the record. The parents participated in all conferences up to the end of his 12th grade year.

The second prong of the *Rowley* decision requires that the IEP developed for the student must be reasonably calculated to enable the Student to receive an educational benefit. This cannot be just a trivial or *de minimus* benefit, but neither must it be the best possible education nor education to the Student's maximum potential.

The case law interpreting the requirements of the law has been depressingly undemanding of public school districts. In *Cypress-Fairbanks Indep. Sch. Dist. V. Michael F. 118 F. 3rd 245, 247-248 (5thCir.1997)* the court referred to a "basic floor of opportunity". *In E.S. v Indep. Sch. Dist. #196, 135 F. 3rd 566 (8th Cir.1998)* the Court found that a student who at 4th grade had broad reading of 3.0; reading comprehension of 3.2; broad written language at 2.7 and writing skills at 2.1, who progressed 3 years later to 3.8 in broad reading; 5.1 in reading comprehension; 3.1 in broad language and 3.8 in writing skills, was benefiting from her education and making progress so that the proposed similar IEP for the next year was "reasonably calculated to provide an educational benefit." A similar line of reasoning is set forth in *Todd v. Duneland Sch. Corp., 299 F. 3rd 899, (7thCir. 2002)*. The United States District Court opinion in the case of *Peter G. v Chicago Pub.Sch.Dist. #299, 2003 U.S. Dist. LEXIS 460, (N.D. Ill.2003)* is instructive as to just how little school districts must do to comply with the law.

However, a new line of cases cited by the Student and Parent attorney is beginning to emerge. I am persuaded by these cases, rather than the older ones cited by the District. These cases require meaningful progress, not just access to specialized education. They refer to more than "de minimus", to an outcome oriented process that incorporates programming designed to transition students over 16 into post–secondary education, independent living and economic self-sufficiency with services that can be measured to determine whether annual goals are being attained. The focus is on "meaningful benefit" and self sufficiency. J.L. and M.L., v. Mercer Island School District, (46IDELR273) (W.D.WA, 2006). This case, decided last December, 2006, goes so far as to state that IDEA 1997 is such a significant departure from the prior legislative scheme "any citation to pre-1997 case law on special education is suspect"! (P.4 of the opinion), and includes Rowley in that "suspect" category! The case goes on to quote the federal regulations commentary on the IDEA 1997 amendments, stating "... one of the key purposes was to promote improved educational results for children with disabilities through educational experiences that prepare them for later education challenges and employment". It goes on to hammer at the requirement of specific IEP goals with the amounts of time committed to various services spelled out in detail as well as the particular teaching methodology that will be used, all of this consonant with the law's overarching intent that the student be guided toward

7

self-sufficiency. The IEP, such as it is, that was proposed for 2007-2008 meets none of these tests. The document sent home in March that appears at Jx67-73 has some admirable generalities and summarizes past intervention well, but is 180 degrees removed from being the full IEP the law requires. The District made the mistake of trying to be too accommodating and too flexible. They presented the parent and Student with a smorgasbord, a buffet of possibilities but they did not do what they are required to do, that is, set out a detailed, fully realized IEP so that the Parents and Student could know exactly what the District was proposing for the Student's 5th year. For the Student to make meaningful progress, based on the Student's unique needs, the Parents have the right to ask for the specifics of what the District is proposing. The District cannot rely on the parent coming back to them and helping them to develop the flexible and tailored program using the Condo as a base that the Student needs. Here the preponderance of the evidence supports the Parent contention that the failure of the District to adequately and appropriately develop an IEP has deprived the Student of the free appropriate public education the law requires them to provide.

The District has done much that is commendable. The Assessment done by District's agent Spectrum is excellent and far exceeds the usability of the assessment done by Dr. Owens, which added nothing to our understanding of the Student's needs and seemed more done to justify the placement at PACE. The District has assisted the Student to be employable; he does in fact have a decent job at Target and seems to be a valued employee. They have provided him with a great background for a position in a food service related enterprise by giving him 2 years of culinary art training culminating in a Certificate for the program that is a valued asset in the area. He has received education in consumer math, and in point of fact has a bank account and a debit card. At PACE he is replicating skills at Evanston Hospital's food service that he learned at his Father's restaurant over 2 years ago and that he perfected in the Culinary Arts Program at TCD. He is not being paid for what he does. He is learning to write checks to pay for his food and supplies every week, but it is an exercise, it is not money he has earned. He is reading Greek Myths, but one wonders if this is what he needs to reinforce and upgrade his deficits in reading and language. He is learning to use public transportation in Evanston to get to work, but states as a goal to return to his home community in the western suburbs. His ability to transfer his learning to different circumstances is an unknown factor. It does not seem to be a strength of his. He is very happy at PACE because he away at school like his brother, he is in a comfortable non-challenging situation where he is safely supervised, and where he is capable of doing just about everything, so he feels fine and he enjoys it. Most people would. PACE is a unique and excellent program for many youth, but the fact remains that he could do all of this, and has done most, in the District. The District can easily replicate this program, and can probably even assist him to live independently with other COD, TCD or Condo Students who are in similar situations. They just need to do it.

I was persuaded by the reasoning in the Susquehanna Township School District v.Frances J. and Charles J., parents of Jelani J., and Jelani J., 823 A.2d 249: 39 IDELR 5, 103 LRP 18457 case to fashion the remedy here, in order to do what is fair to all parties. That case differs in that the District in the Student's 12th grade IEP agreed to provide the Student with a one-year post secondary, college prep program. Various things transpired, none relevant here, but the parent's placed the student in a residential college prep program in another state. The Court ordered reimbursement of the tuition and fees, but not the room and board. That seems to be an

appropriate remedy here. The District did not offer the IEP that it was legally required to do even though I am finding that it could have provided a perfectly acceptable program in the District. The Parents were then entitled to enroll the Student in a program that does provide some of the services that he needs, albeit, not as useful or as good as what the District could do, but didn't. They are not however, entitled to have the district pay for a residential placement for a Student who does not need it. In point of fact it removes him from family, friends, community, church group and other supports that he is familiar with in Glen Ellyn, and has in fact, known all his life.

The findings on the specific issues are:

1. The 2006-2007 IEP was appropriate. The 2007-2008 IEP does not in sufficient detail address the Student's transition to independent living, post-secondary training or education and self-help and self-advocacy skills. The 2007-2008 IEP does not exist as a completed, stand alone document with measurable services to be provided, the time committed to each, the level of proficiency expected and the provider.

2. The District did not provide a sufficiently formulated IEP for the 2007-2008 school year with programming and services that are designed to transition him to post-secondary education, independent living or economic self-sufficiency as FAPE is understood for a handicapped student.

3. The Student does not require placement at PACE in order to be educated as required by applicable law. The District does need to reimburse the Parents, as explained in the opinion, for the tuition they have paid for the fall program at PACE. No compensatory reimbursement beyond this is required.

4. The Student does not require out of District placement to receive an education. In addition, there was no evidence showing he is receiving, at PACE, anything the District could not provide or has not provided in the past, other than the dormitory living situation and the ersatz "college" experience.

## ORDER

1. Within 10 days of this order, the School District shall reconvene the IEP conference and create an IEP to provide for a structured full day program, including sufficient flexibility to allow the Student to work at Target every day or at such other paid employment as he prefers and can obtain. This program shall include instruction in the use of any public transportation

that exists in the Glen Ellyn area and use of the METRA for getting to the city and other areas. It shall also include social interaction training and opportunities, sports and or health club activities, job skills and job finding and application training, additional consumer finance and math education beyond what he has already had at the high school and academic classes or tutoring to continue to address his language and writing deficits.

2. The District may do this in-house by using its own certified staff, its Condo program with a more flexible structure or by hiring qualified individuals. They may arrange to provide the services at the condos or a site other than Glenbard West. They are authorized, by this order, if they find it most expeditious and efficient to do so, to arrange to provide any or all of these services by contracting to pay the tuition at PACE, Elmhurst College, the College of Du Page, the Technology Center of DuPage or any other appropriate program with the necessary components to address the requirements of moving him toward post-secondary education, independent living or economic self-sufficiency set out in the law. If any services are provided off school district premises the District shall provide transportation or reimbursement to and from the school, site and home. This order shall provide continuing authorization for the District to continue such tuition payments through the 2008-2009 school year if the Parties decide that this is the most resource efficient and effective plan to deliver services to the Student. These payments are not reimbursable by ISBE unless the law or regulations change to so allow.

3. The Student and his Parents are to attend the IEP conference. The Student is to be the decision maker, in consultation with his parents (and attorney, if they so decide).

4. Assistive Technology Devices shall be integrated into the Students curriculum as determined by the IEP participants. Persons skilled in utilizing such Assistive Technology Devices shall be called upon as needed.

5. The Parent's shall present the District with a copy of a paid bill for the tuition and fees for the fall portion of the PACE program, approximately $8000.00. The District shall reimburse the Parents promptly. The District is not to pay room and board under this order.

6. The district shall submit proof of compliance with this order to the Illinois State Board of Education, Program Compliance Division, 100 North First Street, Springfield, Illinois 62777 within 30 days from the receipt of this decision.

## RIGHT TO REQUEST CLARIFICATION

Either party may request clarification of this decision by submitting a written request for such clarification to the undersigned hearing officer within five (5) days of receipt of this decision. The request for clarification shall specify the portions of the decision for which clarification is sought, and a copy of the request shall be mailed to the other parties and to the Illinois State Board of Education. **The right to request such a clarification does not permit a party to**

**request reconsideration of the decision itself, and the hearing officer is not authorized to entertain a request for reconsideration.**

## RIGHT TO FILE A CIVIL ACTION

This decision shall be binding upon the parties unless a civil action is commenced. Any party to this hearing aggrieved by this final decision has the right to commence a civil action with respect to the issues presented in the hearing. Pursuant to ILCS 5/14-8.01(i), that civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of this decision is mailed to the parties.

## CERTIFICATE OF SERVICE

The undersigned hearing officer certifies that she served copies of the aforesaid Decision and Order upon Counsel, and the Illinois State Board of Education by fax on October 25, 2007 and at their stated addresses by depositing same with the United States Postal Service at Forest Park, Illinois with postage prepaid.

_____

**JUDGE JULIA QUINN DEMPSEY
IMPARTIAL DUE PROCESS HEARING OFFICER**

ENTER: October 25, 2007

Charles P. Fox
Law Offices of Charles P. Fox
3710 Commercial Ave.
Ste. #6
Northbrook, IL 60062
847-205-9897

Mr. and Mrs. Anthony Vassil
2 N 631 Diane Ave.
Glen Ellyn, IL 60137

January 20, 2008

#1175

| | | Hours | Amount |
|---|---|---|---|
| 4/1/07 | Reviewing file in preparation for meeting | 2.00 | 490.00 |
| 4/2/07 | Meeting with clients | 2.25 | 551.25 |
| 4/3/07 | Call from client | 0.25 | 61.25 |
| 4/10/07 | Call from counsel | 0.25 | 61.25 |
| 4/12/07 | Emails to and from counsel | 0.50 | 122.50 |
| 5/3/07 | Call with clients | 0.75 | 183.75 |
| 5/16/07 | File review | 0.50 | 122.50 |
| 5/18/07 | Email from and to clients | 0.50 | 122.50 |
| 5/19/07 | Call to clients and email to clients | 1.00 | 245.00 |
| 5/22/07 | Meeting to investigate settlement; meeting with clients | 2.50 | 612.50 |
| 5/30/07 | Call from clients;emails from clients | 0.50 | 122.50 |
| 6/7/07 | Preparing due process filing | 1.75 | 428.75 |
| 6/11/07 | Finalizing letter for due process | 0.75 | 183.75 |
| 6/18/07 | Fax to client and reviewing fax re: due process submission | 0.25 | 61.25 |

Mr. and Mrs. Anthony Vassil                                          Page 2
January 20, 2008

|         |                                                                                       | Hours | Amount   |
|---------|---------------------------------------------------------------------------------------|-------|----------|
| 6/29/07 | Emails and call from clients                                                          | 0.75  | 183.75   |
| 7/1/07  | Emails to counsel and to IHO                                                          | 0.25  | 61.25    |
| 7/6/07  | Emails and letter                                                                     | 0.25  | 61.25    |
| 7/10/07 | Call from clients                                                                     | 0.50  | 122.50   |
| 7/11/07 | Preparing prehearing packet and calls from counsel and email to IHO                  | 1.50  | 367.50   |
| 7/17/07 | Prehearing and emails from counsel and to clients                                    | 0.75  | 183.75   |
| 8/1/07  | Meeting at PACE and call to client and reviewing PACE literature                     | 3.50  | 857.50   |
| 8/15/07 | Call with expert wtiness                                                              | 0.75  | 183.75   |
| 8/20/07 | Reviewing c.v. for expert and preparing index for documents                          | 3.75  | 918.75   |
| 8/23/07 | Copying clerical charge                                                               | 1.00  | 80.00    |
|         | Organizing file and reviewing materials for hearing                                  | 2.75  | 673.75   |
| 9/4/07  | Email from and to clients and call to client; prehearing conference for case;emails re: scheduling and expert | 2.75  | 673.75   |
| 9/12/07 | Research for case on issues of transition, LRE and non-certified schools             | 4.25  | 1,041.25 |
| 9/18/07 | Meeting with counsel to review documents for hearing                                 | 1.25  | 306.25   |
| 9/19/07 | Research for case and call from client; emails to expert                             | 4.75  | 1,163.75 |
| 9/24/07 | Meeting with witness and reviewIng for hearing                                       | 3.00  | 735.00   |
| 9/25/07 | Preparing documents for evidence book; preparing motion in limne                     | 4.50  | 1,102.50 |
| 9/26/07 | 5 day submissions and reviewing and researching for hearing                          | 6.00  | 1,470.00 |

Mr. and Mrs. Anthony Vassil                                    Page 3
January 20, 2008

| | | Hours | Amount |
|---|---|---|---|
| 9/29/07 | Meeting with clients to prepare for case | 4.75 | 1,163.75 |
| 10/1/07 | Preparing outlines; research for case; and trial preparation | 9.00 | 2,205.00 |
| 10/2/07 | Due process hearing; preparation and research for hearing | 9.00 | 2,205.00 |
| 10/3/07 | Preparation for hearing | 7.00 | 1,715.00 |
| 10/4/07 | Preparation for hearing; due process hearing | 9.00 | 2,205.00 |
| 10/5/07 | Due process hearing | 6.00 | 1,470.00 |
| 10/10/07 | Researching and reviewing cases for presentation to IHO | 5.50 | 1,100.00 |
| 10/22/07 | Reviewing decision with clients | 1.50 | 367.50 |
| 10/29/07 | Call and email with clients; email to counsel re: meeting (as required under order) | 1.25 | 306.25 |
| 11/20/07 | IEP meeting per IHO order | 3.75 | 918.75 |
| | For professional services rendered | 112.75 | $27,211.25 |
| | Additional charges | | |
| 8/23/07 | Copying charges for documents to expert | | 45.00 |
| 8/24/07 | Postage charge for maling records | | 26.00 |
| | Total costs | | $71.00 |
| | Total time and expense charges | | $27,282.25 |
| | Balance due | | $27,282.25 |